**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

CARLOS J. CRUZ-CENTENO              *
                                                      *
      Plaintiff                             *
                                                      *
v.                                                   *          **Civil No. 08-1160 (SEC)**
                                                      *
COMMISSIONER OF SOCIAL       *
SECURITY                                   *
                                                      *
      Defendant                          *
**************************************

**OPINION AND ORDER**

This is an action brought under 42 U.S.C. § 405(g), the "Social Security Act."

Plaintiff seeks review of the Commissioner of Social Security's ("the Commissioner") denial

of social security benefits (Docket # 1). See 20 C.F.R. § 404.1520(f). The Commissioner of

the Social Security Administration ("SSA") filed a Memorandum of Law in support of the

decision to deny benefits (Docket # 7), and Plaintiff filed her own Memorandum of Law

(Docket # 6).  After reviewing the parties' filings and the applicable law, the Commissioner's

decision to deny Plaintiff disability benefits will be **AFFIRMED**.

      **Standard of Review**

The scope of our judicial review of a Commissioner's final decision is limited both

by statute and case law. See 42 U.S.C. §405(g). Section 405(g) provides that the findings of

the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."

In Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consolidated Edison Co. v. N.L.R.B.,

305 U.S. 197 (1938)), the United States Supreme Court defined "substantial evidence" as

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Id. at 401; see also Tsarelka v. Secretary of

H.H.S., 842 F. 2d 529, 534 (1st Cir. 1987). Moreover, the First Circuit has held that this

determination of substantiality must be made on the record as a whole. See Ortiz v. Secretary

of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Furthermore, written reports submitted by non-

examining physicians who merely reviewed the written medical evidence are not substantial

evidence, although these may serve as supplementary evidence for the Administrative Law Judge ("ALJ") to consider in conjunction with the examining physician's reports. Irrizary v. Commissioner of Social Security, 253 F. Supp. 2d 216, 218 (D.P.R. 2003). Lastly, "it is the Secretary's responsibility to choose between conflicting evidence." Burgos López v. Secretary of H.H.S., 747 F.2d, 37, 41 (1st Cir. 1984); see also Tremblay v. Secretary of H.H.S., 676 F. 2d 11, 12 (1st Cir. 1982). Nevertheless, these findings are not conclusive ". . . when derviced by ignoring evidence, misapplying the law or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999) (*per curiam*).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n.5 (1987).It is well settled law that a claimant is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a). In making this determination, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520; see, e.g., Goodermote v. S.H.H.S., 690 F.2d 5, 6-7 (1st Cir. 1982).

The five-step inquiry made by the ALJ in determining whether a claimant is disabled is as follows. First, the ALJ asks: is the claimant currently employed? If so, she is not disabled; if she is not, then the ALJ must turn to the second question: does the claimant have a severe impairment (one which significantly limits his ability to perform work-related functions)? If not, then she is not disabled; if so, the ALJ must ask: does the claimant have

an impairment equivalent to those contained in the regulations' Appendix I? If so, then she is automatically rendered disabled. If not, then the ALJ must determine if the claimant's impairment prevents her from performing work that he has done in the past. If the ALJ determines that the claimant cannot perform her past work, then he must determine if claimant's impairment will prevent him from performing other work of the sort found in the national economy. If the claimant cannot perform any such work, she is disabled. If she is capable of performing work available in the economy, then she is not disabled under the Social Security standards. See Goodermore, 690 F. 2d at 6-7.

As stated above, the burden is on the claimant to establish that he is disabled, and unable to return to his past work. Id. at 7. However, if the claimant meets this burden, then it is the Secretary's burden to show that there are other jobs in the national economy that the claimant can perform, notwithstanding his disability. Id.; see also, Torres v. Secretary of H. H. S., 677 F. 2d 167, 168 (1st Cir. 1982); González-Alemán v. Secretary of H.H.S., 86 F. 3d 1146,  1996 U.S. App. LEXIS 11655 (1st Cir. 1996). In satisfying this burden, the Secretary may rely on a set of rules, referred to as Grids, which are basically a matrix "combining different permutations of the four essential factors set out in the statute (age, education, work, experience, and residual work capacity) and stating, as to each combination, whether a claimant with those characteristics is disabled or not disabled." Vázquez v. Secretary of H.H.S., 683 F. 2d 1, 2 (1st Cir. 1982).

Where a claimant has only strength limitations, that is, exertional limitations, the ALJ may rely on the Grids to meet the burden of determining that there are jobs available for the claimant in the national economy which he can perform. González-Alemán,  1996 U.S. App. LEXIS 11655 at * 2. However, if the claimant has non-exertional impairments, the Grid may not accurately reflect the availability of suitable jobs. Id. That is, considering that the Grid is based on a claimant's exertional capacities, "it can only be applied when a claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." Rivera-Rivera v. Barnhart, 330 F. Supp. 2d 35, 37 (D.P.R. 2004)(Rose v.

4

Shalala, 34 F.3d 13, 19 (1st Cir. 1994)). Therefore, in cases "where a nonexertional impairment significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the Secretary must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert." Miranda-Monserrate v. Barnhart, 520 F. Supp. 2d 318, 325 (D. P. R. 2007)(internal citations omitted). However, "should a non-exertional restriction be found to impose no significant limitation on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate." Rivera-Rivera, 330 F. Supp. 2d at 37-38.

In considering whether a claimant's residual work capacity is reduced by non-exertional limitations, the Secretary must assess the claimant's mental capability for unskilled work, and his ability to cope with the demands of any work environment. See Miranda-Monserrate, 520 F.Supp. 2d at 326; Irlanda v. Secretary of H.H.S., 955 F. 2d 765, 769-770 (1st Cir. 1991). The first inquiry focuses on whether a claimant is able to understand, remember, and carry out simple instructions, respond appropriately to the normal work environment, and to deal with the changes in a routine work situation. Id. The second inquiry requires determining whether a claimant can be punctual, attend work on a regular basis, accept supervision, and remain in the work place for an entire day. Id. at 326.

Finally, an ALJ is a lay fact finder that lacks the expertise to make a medical conclusion, and, as such, "he cannot interpret raw, technical medical data." Irrizary, 253 F. Supp. 2d at 219 (citing Rivera-Torres v. Secretary of H. H. S., 837 F. 2d 4, 7 (1st Cir. 1988); Berríos v. Secretary of H. H. S., 796 F. 2d 574, 576 (1st Cir. 1986)).

**Factual and Procedural Background**

Carlos J. Cruz ("Plaintiff") was born in 1950, and was 56 years-old at the time of his disability hearing. T.R. at 158. He has an 8th grade education, and prior to his back injury, he worked as a supervisor, or work group leader, for a Cathedral Management Incorporated maintenance crew from 1970 to 2000. T.R. at 162-164. Between 1998 and 1999 he alleges to have suffered a back injury, for which he never required workers compensation leave, and that by the end of 2000, this

injury made it impossible for him to work. T.R. at 160.

Plaintiff filed the present complaint on February 2, 2008 pursuant to Section 205 (g) of the Social Security Act, 42 U.S.C. § 405 (g), to review a final administrative decision of the Commissioner of Social Security denying his application for disability benefits.  Docket # 1.  The Commissioner, Michael J. Astrue, answered the complaint on June 9th, 2008.  Docket # 5. Subsequently, both parties filed memorandums of law in support of their respective claims.  See Dockets # 6 and # 7.  On November 30th, 2006, the Administrative Law Judge decided that Plaintiff was not disabled as defined in the Social Security Act, and thus did not qualify for benefits. Utilizing the five-step evaluation process as dictated in 20 C.F.R. § 404.1520, through the date last insured, the claimant had the residual function capacity to lift a maximum of 50 pounds with frequent carrying up to 25 pounds.  He could stand, walk, and sit for a total of about 6 hours in an 8 hour workday, and he has no postural, manipulative, visual, communicative, or environmental limitations. Through the date last insured, the claimant's residual functional capacity did not preclude him from performing his job as supervisor of janitorial services.  Thus, claimant was found not disabled pursuant to the Social Security Act form the alleged onset date, January 7, 2000, to the date last insured, December 31, 2004.  T.R. at 17-19. Central to the ALJ's conclusions were the contradiction between different physicians regarding the severity of Plaintiff's back problems, and the fact that he had never followed "a continuous medical regimen of treatment for the control of his physical distress." T.R. at 19.

**Applicable Law and Analysis**

Claimant alleges the following specific errors of law committed by the ALJ: 1) the ALJ erred by misconstruing the nature of the Plaintiff's past work, and by failing to employ the services of a vocational expert to help them reach their decision; 2) the ALJ erred by failing to consider vocational factors such as age, education, and requirements of work; 3) the ALJ erred by making medical determinations as to plaintiff's conditions. Docket # 6 at 3. These arguments will each be discussed in turn.

*Classification of Plaintiff's past work as "Supervisor"*

The ALJ, as detailed by step six of his decision, determined that Plaintiff could perform his prior work as a "supervisor of janitorial services" as said job is "generally performed." T.R. at 20. See 20 C.F.R. § 404.1560 (b), 404.1565. As the first error, Plaintiff suggests that the ALJ  misidentified Plaintiff's past job as supervisor.  Docket # 6 at 3. Additionally, Plaintiff contends that to typify Plaintiff's past relevant work as supervisor, Defendant needed to consult a vocational expert.   More specifically, Plaintiff argues that if the ALJ "was going to typify the plaintiff's past relevant work as supervisor . . . hypothetical questions would have to be propounded to a vocational expert as to the description of the job requirements . . ." Id. at 11.

This argument, however, is defeated not only by the text of relevant regulation but also by First Circuit precedent.   The text of the regulation suggests that an ALJ ". . . **may** use the services of vocational experts. . ." It continues, ". . . such evidence **may** be helpful in supplementing or evaluating the accuracy of the claimant's description of his past relevant work."   20 C.F.R. § 404.1560 (b)(2)(emphasis added).  It is clear from this text that the vocational expert was meant to be an optional, not compulsory, aid.  Accordingly, First Circuit decisions have clarified that "at step 4 of the disability determination process. . . the ALJ is not required to elicit the testimony of a vocational expert."  Santos Martinez v. Secretary of Health & Human Services, No. 94-2152, 1995 U.S. App. LEXIS 10434, at *5 (1st Cir. May 9, 1995)(per curiam, unpublied). Santiago v. Commissioner of Social Security, No. 97-2088, 1998 U.S. App. LEXIS 5374, at *3 (1st Cir. March, 18, 1998) (per curiam, unpublished).

As 20 C.F.R. § 404.1560 (b)(2) suggests, besides calling on vocational experts, an ALJ can base his or her determination of whether or not claimant can perform past work on the claimant's description of his/her past work, as well as "other evidence...such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor." 20 C.F.R. § 404.1560 (b)(2).   Plaintiff reported to "supervising" forty-eight employees for four hours per day (Tr. 64, 66), and to overseeing

7

operations at schools. T.R. at 66. Additionally, he was authorized to hire and fire employees. Id.. However, this Court should note that the ALJ did not rely completely on Plaintiff's description of his duties, finding instead that the Plaintiff could perform his work as it is "generally performed." T.R. at 20. In Plaintiff's initial disability determination dated May 17, 2004, the Commissioner reached a similar conclusion:

> . . . we believe that you cannot do your usual work as a Maintenance Operations Manager as described by you. In spite of this, we believe you are able to do it as it is generally done in the national economy.

T.R. 30.

Although not explicitly mentioned by the ALJ, this most likely stems from the fact that Plaintiff described the exertional demands of his job as having to lift up to 100 pounds and to frequently lift up to 50 pounds (T.R. at 66), while the ALJ had determined that Plaintiff's residual functional capacity was that of lifting up to 50 pounds occasionally and up to 25 pounds frequently. See also T.R. at 30. Because 20 C.F.R. § 404.1560 (b)(2) expressly refers to "past relevant work, either as the claimant actually performed it or as generally performed in the national economy," we find that the ALJ did not err in classifying Plaintiff's past relevant work as that of a "supervisor of janitorial services" as it is "generally performed" without utilizing the services of a vocational expert.[1]

*Relevance of Plaintiff's Age, Education, and Residual Function Capacity*

Plaintiff's second batch of allegations suggests that the ALJ should have considered Plaintiff's age, education, requirements of work, and residual functional capacity, along with the Medical Vocational Guidelines, also known as "The Grid." See 20 C.F.R. § 1566 (d), 20 C.F.R. pt. 404, supt. P, app. 2. More specifically, that Plaintiff avers that the ALJ should have applied Grid Rule 201.14 to determine that claimant was disabled based on step four. See 20 C.F.R. pt. 404, subpt. P, app. 2; Docket # 6 at 11. However, this Court finds that the

---

[1] At step six the ALJ concluded: "Through the date last insured, the claimant's past relevant work as a supervisor of janitorial services did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565)." T.R. at 20.

error was not committed.

"The Grid" is meant to be used at step five of the procedures, where it has already been determined that the "individual's impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. pt. 404, Subpt. P, app. 2 § 200 (a); see also Seavey v. Barnhart, 276 F. 3d 1, 5 (1st Cir. 2001); Sherwin v. Secretary of Health & Human Services, 685 F.2d 1, 2 (1st Cir. 1982). Thus, the ALJ found at step four of the procedures that Plaintiff was capable of resuming his prior employment, and that ". . . the allegations of significant physical limitations in his ability to perform basic work-related activities are not credible." Because this Court finds that the decision regarding Plaintiff's residual functional capacity was correct, the ALJ was in no way bound by the Medical Vocational Guidelines.

*Whether the ALJ Made Improper Medical Determinations*

For his final point of error, Plaintiff alleges that the ALJ "made medical determinations, as to plaintiff's conditions," thus becoming "his own medical expert . . ." Docket # 6 at 3.   This includes two inter-related issues: 1) the allegation that the ALJ erred by not giving sufficient weight to the treating physician evidence (id. at 17-19); 2) that the ALJ failed to give sufficient weight and credibility to Plaintiff's testimony (id. at 19- 20).

The argument boils down to Plaintiff's assertion that the ALJ should have given decisive weight to the opinion of the treating physicians, Dr. Ramon Gerena-Delgado ("Gerena"), a general practitioner, and Dr. Edgar C. Hernandez ("Hernández"), a consulting neurologist, rather than to the evaluations performed by Dr. Acisclo Marxuach ("Marxuach") (T.R. at 136-144), a state agency physician, and Dr. Jose R. Pesquera, a second physician who affirmed Dr. Marxuach's conclusions. See T.R. at 26, 135, &144).

The Social Security Administration's method for weighing a medical physician's report is set out in 20 C.F.R. § 404.1527 (d):

> Generally, we give more weight to opinions from your treating sources... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion

controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

Thus, although an ALJ should generally give more weight to the treating physicians' evidence than to other evidence presented, he may grant greater weight to non-treating sources in appropriate circumstances. Rodriguez Pagan v. Secretary of Health and Human Services, 819 F. 2d 1, 3 (1st Cir. 1987); Lizotte v. Secretary of Health and Human Services, 654 F. 2d 127, 130 (1st Cir. 1981).  As the First Circuit suggests, "[t]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ."   Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001).

In this case, the ALJ did not disregard any of the objective opinions of Plaintiff's treating sources. See T.R. at 17-20. Dr. Gerena diagnosed the Plaintiff with a herniated disk, neuropathy, and hypertension. T.R. at 127.  The ALJ did not challenge this fact, rather he pointed out that Dr. Gerena had described the claimant as "having a normal motor system, normal sensory system; and normal reflexes;" his lower extremities showing "normal pulsations, with no evidence of deformities, inflammation, fractures and edema or throphic changes." T.R. at 18.   Meanwhile, the ALJ considered neurologist Dr. Hernandez's finding that claimant "reported 5/5 muscle strength, bilaterally, with good bulk and tone, +2 deep tendon reflexes," that "no pathological reflexes were evident," and that patient had "arthrosis of the facet joints, with no evidence of local intervertebral disc herniation or central spinal stenosis." T.R. at 18.  Ultimately, Dr. Hernández concluded that Plaintiff suffered from chronic lower back pain and a lumbosacral strain." T.R. at 129.  Nowhere in the record did Dr. Hernández state that this condition precluded the claimant from performing within the bounds of his residual functional capacity as determined by the State Agency's doctors.

Thus, the ALJ did not disregard the diagnosis made by the treating doctors.  If anything, he disagreed with their assessments as to the credibility of Plaintiff´s back pain

symptoms. Docket # 7 at 22.   Still, it is clear that the ALJ's decision was consistent with, and supported by, the preponderance of the evidence, including that supplied by the treating physicians.

Additionally, it is important to note that  Plaintiff did not provide the ALJ with a function assessment performed by a treating physician, so the state agency physicians' assessment report, prepared by Dr. Marxuach (T.R. at 136-44), and affirmed by Dr. Pesquera (T.R. at 135 & 144),  constitutes undisputed medical evidence regarding Plaintiff's residual functional capacity.  This begs the question of whether the ALJ can rely solely on State Agency physicians for residual function capacity determinations.

First Circuit precedent has established that ALJs may rely entirely on function reports prepared by non-testifying, non-examining physicians. See Berrios Lopez v. Secretary of Health and Human Services, 951 F.2d 427, 429-32 (1st Cir. 1991). In Rosi v. Shalala, the court added that "this is especially true where...these reports include medical findings to support the conclusions; the reports were prepared after most of the relevant medical data was generated; and the reports tend to reinforce one another." Rossi v. Shalala, No. 95-1045, 1995 U.S. App. LEXIS 27530, at *9 (1st Cir. Sept. 25,1995) (*per curiam*, unpublished).  In a related context, the First Circuit has also established that ALJs may rely entirely on the testimony of non-examining physicians, as distinguished from the non-testimonial written reports. It has held that the testimony of a non-examining medical examiner, relied on to assess "claimant's residual functional capacity based on evaluations of claimant's medical condition submitted by examining physicians," constituted substantial evidence to support the Secretary's finding.  Alida Rodriguez v. Secretary of Health and Human Services, 893 F.2d 401, 403 (1st Cir. 1989).  Thus, this Court concludes that the ALJ did not err on relying on the State Agency Doctors for  residual function capacity determinations.

Finally, this Court must conclude whether the ALJ erred by not giving sufficient credibility to claimants complaint of disabling pain.  Relevant sections of the Social Security Act suggest that an individual's statement as to pain shall not alone be conclusive evidence

of disability; rather:

> . . . there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairments . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished …would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423 (d) (5a).  See also 20 C.F.R. § 404.1529; Avery v. Secretary of Health & Human Services, 797 F.2d 19 (1st Cir. 1986).

In light of the above, this Court finds that the ALJ adequately supported his conclusion with the evidence on record.  The ALJ based his findings upon the discrepancies between Plaintiff's assertions and the information contained in the document reports and medical evidence.  He considered the evidence regarding the symptoms typical of disabling pain, the amount of medication prescribed, the frequency of Plaintiff's doctor visits, and Plaintiff's testimony at the hearing. See  T.R. at 19.   Regarding Plaintiff's physical exam results, the ALJ found that they did not support the severity of his pain.  He also specifically noted several tests and diagnosis that provided results within normal limits.  For example, Dr. Gerena described Plaintiff as having a normal motor system, normal sensory system, and normal reflexes; his lower extremities showing no evidence of deformities or inflammation. T.R. at 18.  Meanwhile, Dr. Hernandez reported that patient had exhibited good muscle strength, bulk, and tone. T.R. at 18.  Additionally, ALJ suggests that the record did not show that Plaintiff had "procured treatment for an intractably painful condition, or specifically followed a continuous medical regimen of treatment…" T.R. at 19.

Furthermore, at the hearing, the ALJ noted that Plaintiff had no apparent trouble walking. T.R. at 18.  The ALJ also "closely observed [Plaintiff's] demeanor and behavior, his responses… his facial expressions and body dynamics, and his reaction in and to the hearing proceedings . . ." Id. Therefore this Court concludes that "the credibility determination by the ALJ who observed the claimant, evaluated her demeanor, and

12

considered how that testimony fit in with the rest of the evidence is entitled to deference. . ." <u>Frustaglia v. HHS</u>, 829 F.2d 192, 195 (1st Cir. 1987).  Based on all of the above, this Court concludes that the ALJ did not err in the third and last error alleged by the Plaintiff, that of becoming "his own medical expert."

**Conclusion**

In light of the above, the ALJ's decision is hereby **AFFIRMED**, and this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of September, 2009.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge